COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


GROOME TRANSPORTATION, INCORPORATED AND
 V.I.P. & CELEBRITY LIMOUSINES, INC.
                                            OPINION BY
v.         Record No. 2332-97-2     JUDGE JOSEPH E. BAKER
                                          JUNE 30, 1998
VIRGINIA DEPARTMENT OF MOTOR VEHICLES AND
 GULFSTREAM LIMOUSINE COMPANY


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Melvin R. Hughes, Jr., Judge

          Hamill D. "Skip" Jones, Jr. (Bryan W. Horn;
          Florance, Gordon and Brown, P.C., on briefs),
          for appellants.

          Jeffrey A. Spencer, Assistant Attorney
          General, for appellee Virginia Department of
          Motor Vehicles.

          Robert F. Pannell (Robert F. Pannell, P.C.,
          on brief), for appellee Gulfstream Limousine
          Company.

          Amicus Curiae:  Virginia Motorcoach
          Association, Inc. (Donald M. Schubert; Calvin
          F. Major; Goddin, Major, Schubert & Hyman, on
          brief), for appellants.



     Groome Transportation, Incorporated and V.I.P. & Celebrity

Limousines, Inc. (jointly referred to herein as appellants)

appeal from a decision of the Circuit Court of the City of

Richmond (trial court) which affirmed the Department of Motor

Vehicles' (DMV) award to Gulfstream Limousine Company

(Gulfstream) of a certificate of public convenience and necessity

as a Class A special or charter party carrier (certificate) in

all parts of the Commonwealth of Virginia.  Appellants contend

the trial court applied the wrong standard of review to the DMV's decision and erroneously found the evidence sufficient to grant Gulfstream's application for the certificate. Appellants assert (1) that existing service satisfies the "existing public need" for the service Gulfstream sought permission to exercise, (2) that the evidence fails to show Gulfstream is financially fit to provide economical, comfortable, and convenient service, (3) that the decision contravenes the established policy behind the certificate system, and (4) that the trial court "ignored" the DMV's lack of sufficient experience in the area of the subject matter of Gulfstream's application. For the reasons that follow, we affirm the trial court's approval of the DMV's issuance of the Class A certificate.

Prior to July 1, 1995, the State Corporation Commission (SCC), sitting as a court of record, regulated the issuance of certificates of public convenience and necessity to motor carriers. Effective July 1, 1995, the General Assembly transferred such regulatory power to the DMV. See Act of April 6, 1995, 1995 Va. Acts chs. 744, 803. Pursuant to the Administrative Process Act (APA), Code §§ 9-6.14:1 to 9-6.14:25, the DMV conducted an administrative hearing on Gulfstream's application. While guided by the SCC's historical treatment of issues raised by Gulfstream's application, we hold that the DMV's consideration of such applications must conform to the requirements of the APA. In this appeal, we review the ruling of

- 2 -

the trial court as a proceeding under the provisions of the APA, initiated by Gulfstream to obtain the certificate.

The record reveals that on March 29, 1996, Gulfstream applied to the DMV for a certificate as a special or charter party carrier to transport passengers or charter parties to and from all points in Virginia. Prior to that time, Gulfstream held a Class B certificate (issued in 1994) for operation as a special or charter party carrier, which permitted operation originating only in designated cities and counties. It also held certificates for operation as an executive sedan carrier (issued in 1993) and a limousine carrier (issued in 1994) in all parts of Virginia. Appellants protested the present application.

A formal DMV administrative hearing was held on September 4, 1996. Gulfstream was not represented by counsel at that hearing. Ms. Courtney Mustin, the sole shareholder of Gulfstream, was allowed to argue the facts on Gulfstream's behalf, but she was not allowed to examine the witnesses, object to evidence, or make legal argument.

The evidence showed that Gulfstream, formed in 1993, is an "S" corporation under the Internal Revenue Code. The financial statements attached to Gulfstream's application showed a net loss, not including depreciation, of $29,164.03 for 1995. Ms. Mustin testified that "while our financial situation may not look good to someone in the conventional sense . . . , I made some personal and management decisions that this is the way I

wanted . . . the financial statement to look, and it was in my personal interest" due to the "tax implication[s]."  She decided to keep "[her] infusion of capital to the business as a loan from stock holder which makes the finances look bad in terms of profit or . . . income."  She also represented that both "[her] own wealth" and the wealth of "people who are interested in investing in the company" were available to Gulfstream and that if "[opposing counsel] want[ed] to go over that at a later point," he was welcome to do so because "[she] [felt] that he ha[d] no idea what [her] personal resources are."  She later emphasized as follows:

> If our financial situation looks questionable it is because I elected to put a great deal of capital into building a top-quality, first-rate business and that included the improvements to that garage, trading vehicles every two years so that I have up-to-date equipment, buying uniforms for my drivers, requiring them to go through training at our expense.  I have put a tremendous amount of money into this.  And a business which has been in business for three years is just coming out of the woods in terms of finances. I am not in this for the quick buck.

Gulfstream listed five vehicles it would use if granted a Class A certificate, including three fifteen-passenger vans, one eight-passenger Suburban, and one nine-passenger station wagon. Ms. Mustin denied she was seeking the Class A certificate in order to sell the rights to a portion of it.

Ralph Earnhardt, who had thirty-five years experience in hotel, transportation, and consulting management, testified on

behalf of Gulfstream.  Among his many qualifications, he listed three years as vice president of Gray Line, the largest U.S. sightseeing operation, and ten years in a local package tour service, which eventually involved the management of "three thousand [motor] coaches a year."  He had been working with Ms. Mustin to obtain Gulfstream's transportation services for several frequent independent traveler packages he was developing and had been "overwhelm[ed]" by her attitude, professional conduct, and equipment.  He also mentioned a need for transportation for commercial tours from the Soviet Union in 1997 which "[he] couldn't fill strictly in Richmond" and, further, that he needed transportation from the Roanoke, Dulles, and Norfolk airports.  When he learned Ms. Mustin had an application pending for license expansion, he explained his reaction as follows:

> I volunteered my services to speak on her behalf as operating a professional operation and one that I feel there is a need for.
>      There is plenty of equipment in Virginia.  There [are] plenty of licenses in Virginia, but from my perspective as an operator who wants to increase tourism and increase my own business there is a gross absence of good attitude of working partners.  That is why I volunteered my services to be here.

Ms. Mustin testified that she found it difficult to explain to some of the customers for whom she provides limousine and sedan service on a statewide basis that she could not substitute a van in order to carry a larger group.  In this regard, she

mentioned the Tides Inn and towns on the northern neck, Tappahanock, and Roanoke.

Hearsay evidence is admissible in APA hearings, see Code § 9-6.14:12, and Gulfstream was allowed to submit ten letters. Of the letters comprising Exhibits 1 through 5, most were solicited and written to the Amtrak National Passenger Railway Corp. in support of a bid by Gulfstream for an unrelated contract involving taxicab equipment. Although the letters were dated in 1995, Ms. Mustin stated that they were written by organizations with whom Gulfstream continues to do business. All the companies either were located in Richmond or required Gulfstream's services while visiting Richmond. All attested to Gulfstream's quality of staff, equipment, and service.

Exhibits 6 through 10 were written to the DMV in August and September of 1996 by current clients who were unable to attend the hearing. All attested to the quality of Gulfstream's service.

Exhibit 6, from a physician in Marion, indicated the author's preference for Gulfstream for service from Marion, Abingdon, and Bristol to Richmond. Exhibit 6 also recounted a specific instance in which Gulfstream provided transportation in Richmond during a snowstorm when few other transportation services were able to operate.

Exhibit 7, from The Garden Club of Virginia, confirmed requests for Gulfstream's service for annual garden club tours

which attract about 50,000 guests each April.  Local garden clubs requesting service included those in Tappahanock, Gloucester, Charlottesville, Roanoke, Leesburg, Loudoun County, Martinsville, and Richmond.  The club indicated its "hope to be able to make travel-related referrals to Gulfstream . . . in the future."

Exhibit 8, from the Garden Club of Gloucester, indicated its past satisfaction with Gulfstream's service and its desire to be able to use Gulfstream in the future "[i]f . . . we require[] . . . shuttle service."

Exhibit 9, from Old Dominion Tours and Virginia Destinations, indicated that the company packages tours "throughout the Commonwealth of Virginia" and frequently requires "vehicle charter/rental services in the areas of" the Dulles, Norfolk, Newport News, Richmond and Roanoke Airports.  That letter indicated satisfaction with Gulfstream's services and the company's belief that the expansion of Gulfstream's license authority would be in the best interest of the DMV and Virginia's tourist industry.

Exhibit 10, from the investment company Wheat First Butcher Singer, indicated its satisfaction with Gulfstream's services "for the majority of the firm's local transportation needs over the past 18 months."  It also indicated that it has an occasional need for transportation for offices outside the Richmond area and that it would be likely to use Gulfstream's services for these areas if they were available.

At the close of Gulfstream's evidence, appellants moved to dismiss Gulfstream's application based on a failure to show public convenience and necessity. A DMV hearing officer denied the motion.

Appellants submitted letters from their companies' presidents which claimed lack of need for the additional services proposed by Gulfstream. V.I.P.'s president indicated that the Richmond-to-Tidewater market is already highly competitive, that no charter party has been unable to schedule a trip for lack of available equipment, and that existing charter party carriers have a significant percentage of their equipment sitting idle at any given time. Groome's president confirmed those assertions, indicating that, in his over thirty years of providing charter party service, he knew of "virtually no circumstances" where a charter party had been unable to take a trip due to lack of equipment and that a large percentage of equipment is sitting idle at any particular time.

Other than the letters from the respective presidents of appellants' companies, appellants submitted no evidence to contradict the evidence presented by Gulfstream. Appellants elected to rely on their letters and asserted weaknesses of Gulfstream's case.

By decision of November 19, 1996, the DMV granted Gulfstream's application and awarded a certificate of public convenience and necessity. The DMV held as follows:

> The Applicant has shown a need for its

> proposed service by introducing letters from current customers who state in the letters that each will use the proposed service in the proposed geographic areas and by the testimony of a public witness whose company has requested that the Applicant provide its service in the proposed geographical areas.

The DMV found credible Ms. Mustin's testimony about her access to "considerable financial resources which can be provided to the Applicant by her," and held that "[t]he Applicant has provided sworn testimony in support of its financial fitness and its access to additional financial support if needed."  The DMV also held that "[t]he Applicant has shown its ability to provide and maintain its service and equipment in an efficient manner for over two years while doing business as a special or charter party carrier."  Based on these findings and conclusions, among others, the DMV awarded Gulfstream a Class A special or charter party certificate.

Appellants appealed to the circuit court.  The parties made written submissions and argued to the court.  Gulfstream was represented by counsel in that proceeding, and an assistant attorney general appeared on behalf of the DMV.  By letter opinion of July 30, 1997, the trial court affirmed the DMV's decision.  It noted the shift of jurisdiction from the SCC to the DMV and indicated that it would apply existing substantive case law in the context of the "new" procedural framework of the APA.

Standard of Review

In appellants' exceptions, petition, and memorandum,

appellants did not specifically address the standard of review. In the petition, they argued only that the DMV's decision was "arbitrary and capricious and without any evidence to support it."  In oral argument before the DMV and the trial court, counsel for appellants acknowledged that the proceedings were to be conducted under the APA but did not expressly discuss the standard of review.  Counsel merely asserted there was "no evidence to support" the DMV's decision.  He also argued:

> Gulfstream . . . [and DMV] talked about the great weight of authority that's attached to the D.M.V. decision.
> Now, there's case law all over the place to support the Administrative Agency being prima facie correct and reasonable.
> And that was the test at the S.C.C., too. . . .
> But the Code section of the [APA], in fact, . . . references, "the experience and specialized competence of the Agency."
> Well, we've got a window here that we can jump through on that.  Because D.M.V. is new at this. . . .
>
>     *     *     *     *     *     *     *
>
> [T]hey don't have the experience and specialized competence that is referred to specifically in Section 9-6.14:17 of the [APA].

While appellants failed to specifically argue standard of review, we believe the issue is of sufficient significance to the decision to require our review.  "We conclude that under the APA, whether the agency action is formal or informal, the sole determination by the reviewing court as to issues of fact before the agency is whether there was substantial evidence in the

agency record to support the agency decision."  State Bd. of Health v. Godfrey, 223 Va. 423, 435, 290 S.E.2d 875, 881 (1982); see Code § 9-6.14:17.

In determining whether substantial evidence in the record supports the decisions of the DMV and trial court, we review the evidence and reasonable inferences it raises in the light most favorable to the prevailing party below.  See Abbott Bus Lines, Inc. v. Courtesy Bus Lines, Inc., 230 Va. 181, 187, 335 S.E.2d 818, 821 (1985).  We will not substitute our judgment for that of the agency.

> The "substantial evidence" standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  We find that the evidence in this record meets that standard.

### Proof of Public Convenience and Necessity

Three factors are generally considered in determining whether a certificate of public convenience and necessity will be granted:  (1) whether there is "an existing public need for the proposed carrier's service"; (2) whether the proposed carrier has the "ability to provide economical, comfortable and convenient service for the geographical area"; and (3) what "economic and

competitive impact . . . the proposed carrier would have upon existing carriers providing similar service within the same territory."  See Atlantic Greyhound Lines of Va., Inc. v. Jones Bus Co., Inc., 216 Va. 255, 257-58, 217 S.E.2d 857, 859 (1975); see Code §§ 46.2-2303 to -2304.  Appellants have not challenged this third factor.

> As we construe this language, the General Assembly, recognizing the public benefits of competition in the market place, authorized the [SCC] to deny a charter party certificate only when it finds that a grant will create competitive pressures so intense that existing carriers will be unable to earn a reasonable profit.  By protecting certificated carriers from such ruinous competition, the statute protects the public from loss of service.

Abbott Bus Lines, 230 Va. at 188, 335 S.E.2d at 822 (emphasis added).  There is no finding--nor would the evidence support one--that Gulfstream's entrance into statewide competition with appellants would "result in ruinous or unreasonable competition."  See id.

Regarding the first prong of the test, appellants contend Gulfstream failed to prove a need for the proposed service.  They contend, in essence, that the existing quantity of service is sufficient and that Gulfstream's claimed higher quality of service is not relevant to a determination of public need.  We disagree.  In Seaboard Air Line Railroad Co. v. Commonwealth, 193 Va. 799, 71 S.E.2d 146 (1952), the Virginia Supreme Court held as follows:

> Necessity means reasonably necessary not

- 12 -

> absolutely imperative. . . . The convenience
> of the public must not be circumscribed by
> holding the term "necessity" to mean an
> essential requisite . . . . It is necessary
> if it appears reasonably requisite, is suited
> to and tends to promote the accommodation of
> the public.

Id. at 806, 71 S.E.2d at 150 (quoting Union Pacific R.R. Co. v. Public Serv. Comm., 135 P.2d 915, 917 (Utah 1943)).

The decision below is presumed to be correct and will not be set aside unless it is shown to be contrary to the evidence or without substantial evidence to support it. Viewing the evidence most favorable to Gulfstream as the prevailing party below, we find the evidence contained in this record is sufficiently substantial to support the award, does not contravene established public policy, and is "reasonably requisite, is suited to and tends to promote the accommodation of the public."

Regarding the second prong, appellants contend the evidence fails to show Gulfstream is financially fit to provide economical, comfortable and convenient service. Again, we disagree. Assuming, without deciding, that proof of financial fitness is necessary to justify the award of a certificate, we hold that substantial evidence in the record supports the DMV's decision. The DMV found credible Ms. Mustin's testimony regarding the structuring of Gulfstream as an "S" corporation and the additional financial resources available to it. The DMV also properly considered Gulfstream's previous operation as a Class B special or charter party carrier. Therefore, we hold that

substantial evidence supports the DMV's decision that Gulfstream can provide economical, comfortable and convenient service as a Class A special or charter party carrier.

## Established Public Policy

Appellants contend that the Code restricts the number of certificates issued so as not to "diminish[] the value of existing certificates" and that permitting the DMV's decision to stand without sufficient evidence undermines legislative intent. Again, we disagree. One of the purposes of the "public convenience and necessity" test is to prevent the issuance of too many certificates. As discussed above, the record contains substantial evidence to support the issuance of Gulfstream's certificate under this test. No evidence in the record intimates that the issuance of the certificate to Gulfstream would create "ruinous competition," the third prong of the "public convenience and necessity" test. Furthermore, substantial evidence proved that issuance of the certificate to Gulfstream served an "existing public need" for quality service, the first prong of the test. As a result, the diminishment in value, if any, of existing certificates was not inappropriate under the applicable test.

## DMV Experience

Appellants further argue the trial court failed to take into account that the DMV lacked experience to decide the issues in this case and assert the trial court committed reversible error

in failing to consider that lack of experience in its review of the DMV's decision.  We disagree.  The APA provides that "the [reviewing] court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency and the purpose of the basic law under which the agency has acted."  Code § 9-6.14:17.  The General Assembly transferred that decision-making power to the DMV.  Nothing in this record discloses that it did so without first determining that the DMV was fully competent to render judgments concerning the issuance of certificates of public convenience and necessity.  Therefore, we reject appellants' contention.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>