COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Petty
Argued at Alexandria, Virginia


BOWMAN APPLE PRODUCTS COMPANY, INC.
                                                            OPINION BY
v.        Record No. 1977-06-4               JUDGE JAMES W. HALEY, JR.
                                                        SEPTEMBER 18, 2007
COMMONWEALTH OF VIRGINIA,
  STATE WATER CONTROL BOARD AND
  DEPARTMENT OF ENVIRONMENTAL QUALITY


FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Dennis L. Hupp, Judge

Daniel L. Fitch (Wharton, Aldhizer & Weaver PLC, on briefs), for
appellant.

Alfred B. Albiston, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Roger L. Chaffe, Senior Assistant
Attorney General, on brief), for appellees.


The issue here for resolution is whether the inclusion in a Virginia Pollutant Discharge

Elimination System ("VPDES") discharge permit of a provision authorizing photography by

Virginia Department of Environmental Quality ("VDEQ") staff is arbitrary and capricious, when

such photography is "reasonably related to the purpose of the site visit and the particular

inspection being carried out."

FACTS AND PROCEDURAL HISTORY

Bowman Apple Products Company, Inc. ("Bowman") bottles apple products in Mount

Jackson, Virginia.  The company uses well water for cooling and filtration in its operations,

resulting in wastewater.  From a holding pond, this wastewater, at times combined with parking

lot and plant storm water, is ultimately discharged into the North Fork of the Shenandoah River.

Accordingly, Bowman is required to hold a VPDES permit ("the permit") issued by the State

Water Control Board ("SWCB"), subject to re-issue at five-year intervals.[1] Such permits contain

"Inspection and Entry" provisions to assist VDEQ in monitoring compliance with the permit.

The statutory basis for inspection and entry is Code § 62.1-44.20, a provision of the State Water

Control Law. That section reads, "Any duly authorized agent of the Board may, at reasonable

times and under reasonable circumstances, enter any establishment or upon any property, public

or private, for the purpose of obtaining information or conducting surveys or investigations

necessary in the enforcement of the provisions of this chapter."

Prior permits issued to Bowman, likewise unchallenged, contained the following

language:

> W. Inspection and Entry
> The permittee shall allow the Director, or an authorized
> representative, upon presentation of credentials and other
> documents as may be required by law, to:
> 1. Enter upon the permittee's premises where a regulated
>    facility or activity is located or conducted, or where records
>    must be kept under the conditions of this permit;
> 2. Have access to and copy, at reasonable times, any records
>    that must be kept under the conditions of this permit;
> 3. Inspect at reasonable times any facilities, equipment
>    (including monitoring and control equipment), practices, or
>    operations regulated or required under this permit; and
> 4. Sample or monitor at reasonable times, for the purposes of
>    assuring permit compliance or as otherwise authorized by
>    the Clean Water Act and the State Water Control Law, any
>    substances or parameters at any location.
> For purposes of this section, the time for inspection shall be
> deemed reasonable during regular business hours, and whenever
> the facility is discharging. Nothing contained herein shall make an
> inspection unreasonable during an emergency.

Nevertheless, Bowman refused to let VDEQ take photographs during admittedly proper

prior inspections. VDEQ internal correspondence, part of the administrative record,

demonstrates that refusal: (1) "When their lagoon was beyond full and had an inflow and

---

[1] Bowman does not dispute that it must hold a VPDES permit.

outflow . . . I was still not able to take photos.  It was a no photo policy, as they have always stated (no conditions)"; (2) "The permit writer asked to take photos and was denied the opportunity.  The permit writers routinely photograph things such as the outfall point during re-issuance inspections"; (3) "I don't think the statement is true in their letter where they say they have in the past allowed photos of violations.  My recollection has been that no photos were allowed – period"; and (4) "[Bowman] continues to prohibit DEQ staff from taking photographs inside and around their facilities during routine inspections and site visits."

The administrative record also contains language from the Environmental Protection Agency's 2004 manual on compliance and inspection.  That manual includes the following statement:

> Photography is an essential tool used to assist the inspector in preparing a thorough and accurate inspection report, to present evidence in enforcement proceedings, and to document conditions found at a site. . . .
> If the facility representative expresses reservations about allowing the inspector to take photographs [the parties can agree] to avoid photographing sensitive items which are irrelevant to the inspection, and/or allowing the representative to look through the camera's viewfinder prior to taking the photograph.  With digital . . . photography it is possible to immediately show the representative your image with the option to delete it if deemed unacceptable. *As a general rule, it is considered a denial of entry when a facility imposes any photographic restrictions which limit the inspector from properly performing the inspection.*

United States Environmental Protection Agency, NPDES Compliance Inspection Manual 2-17 (July 2004) (emphasis added) (hereinafter "EPA Inspection Manual").

Because of Bowman's refusals, VDEQ requested, and the SWCB added, the following provision to Bowman's April 18, 2005 proposed re-issue permit:  "Facility Entry Special Requirement - It shall be considered a denial of entry and a violation of Part II.W. of this permit

- 3 -

to impose any photographic restrictions which limit Department staff from properly performing inspections and site visits."

During the public comment period prior to re-issue, counsel for Bowman wrote to VDEQ maintaining that Bowman has "always" agreed that photography by inspectors was permissible if there is a "reasonable belief" that a violation has been or is being committed. Counsel objected, however, to "the taking of pictures for no reason whatsoever." He suggested permit language incorporating a "probable cause" of violation standard. That is, Bowman would only allow inspectors to take photographs at the site after written notice that evidence showing a violation, and probable cause of a violation, existed. Thus, Bowman would not permit photography during an inspection, unless and until Bowman is satisfied that there is probable cause that a violation has occurred. Counsel's letter does not address the question whether photography is a permissible evidentiary adjunct when VDEQ executes its statutory mandate in "obtaining information or conducting surveys or investigations necessary" during inspections, as set forth in Code § 62.1-44.20.

After the permit was issued as proposed, over Bowman's objection, Bowman filed suit pursuant to Code §§ 2.2-4000 to -4031, the Virginia Administrative Process Act ("APA"), in the Circuit Court of Shenandoah County. In its pleadings, Bowman maintained: (1) "The Special Requirement creates an impermissible *per se* violation . . . if [Bowman] imposes *any* photographic restrictions on authorized inspectors, even in order to protect secret information and/or its proprietary interests"; (2) "The Special Provision is overbroad and denies [Bowman] the ability to comply . . . without sacrificing its privacy . . . [and] without triggering a *per se* Permit violation characterized as a denial of entry"; and (3) The Special Requirement is "arbitrary and capricious," because it was imposed in "disregard" of statutory authority and is "unique to [Bowman's] permit."

Significantly, nowhere in these pleadings does Bowman deny that VDEQ inspectors have some right to photograph. Rather, Bowman claims that a permittee's refusal to grant that right, even if its exercise threatens proprietary or privacy interests, unlawfully constitutes a *per se* denial of access and, thus, an immediate violation. Indeed, Bowman concedes in its pleadings that: "Th[e] right of entry provision hinges upon reasonableness and the methods necessary to complete an inspection that will allow inspectors to ensure that [Bowman] is in compliance . . . ." The "probable cause" standard, advanced in counsel's letter during public comment, is not raised in these pleadings.

After reviewing the administrative record and considering the argument of counsel, the trial court issued a letter opinion dated January 25, 2006. The court concluded that the issue before it did not involve agency fact-finding and, accordingly, the deference afforded to the agency in such instances was not applicable. Rather, the court addressed the statutory authority granted VDEQ by Code § 62.1-44.20, and whether its inclusion of the Special Requirement in the permit was arbitrary and capricious. Relying on the provisions of Code § 2.2-4029,[2] the court directed VDEQ to amend the Special Requirement as follows: "It shall be considered a denial of entry . . . for the permittee to prevent or restrict photography . . . reasonably related to the purpose of the site visit and the particular inspection being carried out under this permit."

The court explained the amendment in its letter opinion,

> Bowman's interference with photography . . . would not be a *per se* violation of the permit. There would be an evidentiary issue as to whether the photography exceeded the scope permitted and hence whether Bowman would be justified in objecting. If Bowman would be found to have prevented or restricted photography reasonably related to the inspection at hand, then such

---

[2] Code § 2.2-4029 states, in pertinent part: "Where a regulation or case decision is found by the court not to be in accordance with law . . . the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit *or direct in accordance with law*." (Emphasis added).

conduct would be deemed to be a denial of entry and a violation of the permit. If the photography would go beyond that necessary to accomplish the inspection, then Bowman would not violate the permit by placing restrictions on such photography.

The court noted that administrative procedures existed to resolve issues arising under the amended Special Requirement language. Accordingly, as amended, the trial court found that the Special Requirement was authorized by statute and was not arbitrary and capricious.

ANALYSIS

Bowman's present challenge, as raised on brief in the Question Presented and in the third paragraph of his pleadings, is whether Code § 62.1-44.20 authorizes photography under the terms of the amended Special Requirement and whether its inclusion, based upon the administrative record, is arbitrary and capricious.[3]

(a) Standard of Review

It is undisputed that the issue here raised is not one where "agency findings of fact are to be accorded great deference," Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243, 369 S.E.2d 1, 7 (1988), because of "the experience and specialized competence of the agency," Code § 2.2-4027. Rather, an "agency does not possess specialized competence over the interpretation of a statute merely because it addresses topics within the agency's delegable authority." Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634, 593 S.E.2d 568, 571 (2004). Thus, "when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts." Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005), cert. denied, 126

---

[3] Initially, we note that the amendment of the Special Requirement at the direction of the trial court has rendered moot, and Bowman has abandoned on appeal, the first two allegations of the pleadings below, that is, that as originally adopted the Special Requirement was overbroad in that it deemed any restrictions on photography, even to protect proprietary or privacy interests, a *per se* denial of entry and thus a violation.

- 6 -

S. Ct. 2862 (2006). See also Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005); Evelyn v. Commonwealth of Virginia Marine Res. Comm'n, 46 Va. App. 618, 624, 621 S.E.2d 130, 133 (2005).

(b) Authorized by Statute

In Commonwealth ex rel. State Water Control Board v. County Utilities Corp., 223 Va. 534, 290 S.E.2d 867 (1982), the Supreme Court of Virginia held that the Board exceeded its statutory mandate when it ordered a private utility company to comply with water quality standards which were admittedly technologically unattainable. The Court stated:

> We conclude that the legislative intent governing the Board's authority to establish and enforce standards was at all times to require that rules be promulgated which are reasonable, practicable of attainment, based upon a fair weighing of the economic and social costs and benefit involved, and of uniform application to all affected parties similarly situated.

Id. at 546, 290 S.E.2d at 874.

As quoted above, Code § 62.1-44.20 directs the Board to inspect permit sites "for the purpose of obtaining information or conducting surveys or investigations necessary in the enforcement of the provisions" of the State Water Control Law.

Precisely put, then, the question before us is whether photography is, within the parameters of the amended Special Requirement, a reasonable means to be employed by VDEQ in meeting the foregoing statutory mandate. We conclude it is.

Bowman's prior permits included a provision granting VDEQ the right to "[h]ave access to and copy . . . any records that must be kept under the conditions of this permit." These permits were never challenged. We see no substantive distinction between copying records and photographing that which an inspector sees is "reasonably related to the purpose of the site visit and the particular inspection being carried out," as set forth in the amended Special Requirement.

- 7 -

We agree with the conclusion set forth in the EPA Inspection Manual: "Photography is an essential tool used to assist the inspector in preparing a thorough and accurate inspection report, to present evidence in enforcement proceedings, and to document conditions found at the site." Photographs are "an aid . . . in ascertaining the truth." Adams v. Ristine, 138 Va. 273, 298, 122 S.E. 126, 133 (1924). They are likewise a reasonable means of "obtaining information or conducting . . . investigations" in accordance with VDEQ's enforcement responsibilities. Code § 62.1-44.20

Support for our conclusion may be found in Brock v. Nabisco Brands, Inc., 1986 U.S. Dist. LEXIS 28733 (W.D.N.Y. Feb. 28, 1986). In Brock, Nabisco asserted OSHA had no right to take photographs during inspections and sought to quash an administrative warrant permitting the same. The court noted that the enabling legislation granted OSHA the right "to inspect and investigate . . . within reasonable limits and a reasonable manner" and that administrative regulations had been promulgated thereunder concerning photography. Id. at *5. In denying the motion, the court stated, "[T]he photographs . . . would assist the agency in formulating its position . . . . [T]his is certainly related to the purpose of the inspection, which is to determine whether or not this employer is complying with the [OSHA] Standards and regulations." Id. at *10.

Moreover, we note that the Supreme Court of Virginia has stated that "[t]he control of discharges into the waters of the State, where properly administered, is a valid exercise of the State's police power, entrusted to the Board by the State Water Control Law. All citizens hold property subject to the proper exercise of the police power for the common good." County Utilities, 223 Va. at 542, 290 S.E.2d at 872 (citing Sanitation Comm'n v. Craft, 196 Va. 1140, 1148, 87 S.E.2d 153, 158 (1955)). Therefore, the use of photography as an evidentiary adjunct,

within the parameters of the amended Special Requirement, is authorized by Code § 62.1-44.20 for that "common good."

(c) Arbitrary and Capricious

Bowman argues that the amended Special Requirement is arbitrary and capricious for two reasons: first, because there is "an absolute paucity of facts" in the administrative record supporting the requirement and, secondly, because the Special Requirement is "unique," that is, not contained in other permits.

In determining whether substantial evidence in the record supports the decisions of the agency and the trial court, "we review the evidence and reasonable inferences it raises in the light most favorable to the prevailing party below." Groome Transp., Inc. v. Va. DMV, 27 Va. App. 682, 693, 500 S.E.2d 852, 857 (1998). "The burden of proof rests upon the party challenging an agency decision to show that the record lacks substantial evidence to support the decision." Consolidation Coal Co. v. Va. Dept. of Mines, Minerals and Energy, 33 Va. App. 784, 788, 537 S.E.2d 15, 17 (2000). See also Code § 2.2-4027 ("The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court.").

In Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 628 S.E.2d 84 (2006), we held that a "decision is arbitrary and capricious only if there is no credible evidence in the record to support the finding and the agency 'arbitrarily disregarded uncontradicted evidence.'" Id. at 87, 628 S.E.2d at 89 (quoting City of Bristol Police Dep't v. Broome, 7 Va. App. 161, 167, 372 S.E.2d 204, 207 (1988)). See also State Bd. of Health v. Godfrey, 223 Va. 423, 435, 290 S.E.2d 875, 881 (1982). We apply that standard here.

Despite counsel's claim in his public comment letter that Bowman has "always" permitted photography whenever Bowman had a "reasonable belief" that a violation has been or

is being committed, the administrative record contains the evidence supplied by those who actually were carrying out inspections. That record, quoted above, shows that Bowman never permitted photography. We conclude, therefore, that evidence is credible and adequately supports the decision of the agency and the trial court.

With respect to Bowman's second argument, the terms of the amended Special Requirement regarding photography may be unique among all other permittees in the Commonwealth. That fact, however, does not render that requirement *ipso facto* arbitrary and capricious. The Special Requirement became necessary for VDEQ to meet its statutory mandate because of Bowman's continued refusal to permit photography, a denial that was, apparently, unique among other permittees in the Commonwealth.[4] Accordingly, the photography provision in the amended Special Requirement is not arbitrary and capricious.

For the foregoing reasons, the decision of the trial court is affirmed.

<u>Affirmed.</u>

---

[4] For example, we note the following excerpt from VDEQ's internal correspondence, quoted above and included in the administrative record: "The permit writer asked to take photos and was denied the opportunity. The permit writers routinely photograph things such as the outfall point during re-issuance inspections."