COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton
Argued by videoconference

CLARENCE ALBERT MAHONEY

v.     Record No. 0669-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JUNIUS P. FULTON, III
APRIL 26, 2022

FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

Virginia F. Podboy (The Railside Law Group, PLLC, on brief), for
appellant.

Rebecca M. Garcia, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


The trial court convicted appellant of strangulation and assault on a family member. He

challenges the sufficiency of the evidence supporting his strangulation conviction.[2] For the

reasons that follow, we affirm the trial court's decision.

*Background*

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Appellant does not challenge his assault conviction.

credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

On August 6, 2020, appellant and his wife, Pamela Mahoney, became embroiled in an argument as they drove home with their eight-year-old son. Upon their arrival, Pamela "quickly" exited the car, entered their house, and retreated to her home office, locking the door behind her. Appellant, who was "very angry," followed her and began "banging" on and "shaking" the office door violently. He demanded that Pamela open the door. When she refused, he punched the door so hard that he "split" it and left holes in it.

Only after Pamela heard her son screaming and crying did she open the door. Appellant immediately "grabbed [her] by the throat" and slammed her against the window so forcefully that the window blinds snapped. Appellant held her by the throat with his right hand as he used his free hand to assault her. Pamela testified that he gripped her throat so tightly that she could not breathe. When he finally released her, appellant walked across the hall to their bedroom and paced back and forth, swearing at Pamela. After a few minutes, he returned to the office and renewed his assault. Appellant "grabbed [Pamela] by the throat and threw [her] on the floor" before leaving again. Appellant repeated these assaults several times between 10:30 p.m. and 3:00 a.m. Pamela estimated that he choked her approximately seven times; "each time he choked [her]," she could not breathe. Some of the choking incidents lasted as long as thirty seconds. As he assaulted his wife, appellant screamed and cursed at her. Too frightened to leave the room or call the police, Pamela waited until appellant left the house the following morning before she called 911.

Deputy Daley responded at approximately 7:45 a.m. When he spoke with Pamela, she was crying, scared, and "very emotional." Daley noticed that an interior door bore a "large hole" and was "broken" near the doorknob, consistent with attempted forced entry. He also observed

that the window blinds in that room were damaged. Daley photographed Pamela's injuries. The photographs, which were admitted at trial, depicted a large oval bruise on the right side of Pamela's throat; it also showed a small laceration above that bruise, immediately below her jawline. Pamela reported to Daley that she was experiencing "soreness."

Before Daley escorted Pamela from the scene, appellant returned home. Appellant admitted that he and Pamela had argued and that "things happened that shouldn't have." Later that day, Pamela sought medical attention at an urgent care facility. Her "chief complaints" included "jaw, face, and neck pain." She continued to experience pain "in those areas" and returned for further medical treatment on August 11, 2020.

At trial, Pamela testified that the bruise on her throat resulted "when [appellant] grabbed [her] around the neck," but she could not state whether a single choking incident caused the bruise, or whether it resulted from appellant grabbing her throat multiple times.[3] Pamela demonstrated to the trial court how appellant squeezed her throat with his hand. She specifically recalled that appellant grabbed her throat as he "push[ed] [her] back," "pinn[ed] her against the wall," and "h[e]ld[] [her] on the floor."

At the conclusion of the evidence, the trial court found that the damage to the door reflected appellant's "rage" and that the bruise on Pamela's throat was "absolutely consistent with a thumb up by the neck and grabbing around the throat." It found Pamela's testimony credible that she could not breathe when appellant choked her. Accordingly, the trial court convicted appellant of one count of strangulation.[4]

---

[3] Pamela also had bruises on her right upper arm and right thigh. She recalled that the bruises on her right arm resulted from appellant "grabbing" her.

[4] As noted earlier, the trial court also convicted appellant of assault on a family member. As appellant does not contest that conviction, it is now the law of the case.

*Analysis*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Instead, we ask "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation[.]" Code § 18.2-51.6. The statute does not define "bodily injury." *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019). The Supreme Court has defined "bodily injury" to include "an impairment of a function of a bodily member, organ, or mental faculty[,] or . . . an act of impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). Thus, "[t]o prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" *Id.* (quoting *English v. Commonwealth*, 58 Va. App. 711, 719 (2011)).

Here, appellant raises two challenges to the sufficiency of the evidence. First, he asserts that the evidence failed to prove that he "intentionally imped[ed]" his wife's breathing or blood flow by "applying pressure to her neck." Emphasizing that Pamela's testimony is the "only" evidence on this issue, he asserts that her testimony was not credible because she gave inconsistent accounts regarding the choking incidents. Appellant stresses that, contrary to Pamela's testimony that he choked her "seven times," Daley's report indicated only one choking incident that night. He also notes that Pamela's affidavit seeking a protective order did not allege that he had "grabbed her neck." Further, appellant maintains that Pamela's testimony that he "squeezed" her neck conflicted with her testimony that he "grabbed her throat and pushed her against the wall or held her on the floor" and that her testimony that he choked her with one hand conflicted with her preliminary hearing testimony that he choked her with two hands.

Appellant argues that Pamela never testified at trial that she experienced "difficulty breathing or any physical effects of impeded circulation" during the "grabbing" incidents, and to the extent that she testified to that effect, her testimony was uncorroborated. He emphasizes that her "chief complaint" when she sought medical attention related to "pain in her jaw and body aches and soreness." Appellant asserts that she did not complain about "ongoing neck pain" and that, despite recounting seven choking incidents, she bore only a single bruise on her neck. He contends that the bruise on Pamela's neck does not corroborate her testimony because "it is impossible . . . to determine" whether the bruise resulted from the assault and battery or from his "impeding" his wife's circulation or respiration.

In a second, related, argument, appellant contends that the evidence failed to prove that Pamela suffered a "bodily injury" as the result of the choking incidents. Citing our unpublished

- 5 -

opinion in *Chilton v. Commonwealth*, No. 1531-13-3 (Va. Ct. App. Nov. 18, 2014),[5] he

maintains that Pamela admitted she had "no idea if the bruise [on her throat] was from where

[appellant] grabbed her neck seven times." Thus, appellant asserts that the evidence failed to

prove beyond a reasonable doubt that the bruise resulted from intentional choking instead of the

assault and battery.

To the extent that either of these arguments rests on the lack of evidence establishing the

source of the neck bruise, we conclude that appellant has failed to preserve them. In his initial

motion to strike at the conclusion of the Commonwealth's case, appellant asserted that a bruise

and a scrape were not sufficiently serious injuries to support a felony strangulation conviction.

In his combined closing argument and renewed motion to strike, appellant argued that the

Commonwealth had failed to prove "the two elements" and that Pamela's testimony was

uncorroborated; however, he never argued that the evidence failed to establish that the bruise on

Pamela's throat resulted from his choking her.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an

objection was stated with reasonable certainty at the time of the ruling, except for good cause

shown or to enable this Court to attain the ends of justice." Rule 5A:18. "One of the tenets of

Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an

alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58

Va. App. 655, 666 (2011). "Procedural-default principles require that the argument asserted on

appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297

Va. 730, 743 (2019). "[N]either an appellant nor an appellate court should 'put a different twist

---

[5] As we have repeatedly held, "[u]npublished opinions . . . have no precedential value." *Kilpatrick v. Commonwealth*, 73 Va. App. 172, 195 (2021) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 639 n.2 (2008)), *appeal granted*, No. 210530 (Va. Dec. 2, 2021). Nevertheless, the citation of an unpublished opinion "is permitted as informative, but will not be received as binding authority." Rule 5A:1(f).

on a question that is at odds with the question presented to the trial court.'" *Id.* (quoting

*Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). "Of critical importance in this case is the

principle that '[n]ot just any objection will do.'" *Jones v. Commonwealth*, 71 Va. App. 597, 606

(2020) (quoting *Bethea*, 297 Va. at 743). Instead, a trial court must be alerted to the precise issue

to which a party objects. *See Kelly v. Commonwealth*, 42 Va. App. 347, 354 (2004). Here,

appellant presents a different argument on appeal than he did to the trial court.

"Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice,

appellant does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v.*

*Commonwealth*, 57 Va. App. 341, 347 (2010). Accordingly, we conclude that appellant has

waived the argument that the evidence failed to prove a "bodily injury" under Code § 18.2-51.6

because no evidence established that her neck bruise resulted from appellant choking her.[6]

We also find no merit in appellant's challenge to Pamela's credibility. "Determining the

credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the

unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v.*

*Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v.*

*Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by

the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal

unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin*

*v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Any "[p]otential inconsistencies in testimony

are resolved by the fact finder." *Id.* at 292. Such conflicts are not revisited on appeal "unless

'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just

---

[6] In any event, we note that Pamela specifically testified that the bruise on her throat resulted "when [appellant] grabbed [her] around the neck." We also note the evidence that appellant pressed his hands against Pamela's neck and rendered her unable to breathe was sufficient to establish a "bodily injury." *Wandemberg*, 70 Va. App. at 133.

inferences therefrom, could reach but one conclusion.'" *Id.* (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). The fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*). "[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their [testimony] is not inherently incredible." *Gerald*, 295 Va. at 486 (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Here, Pamela's testimony that appellant choked her so forcefully that she could not breathe was corroborated by the presence of a "thumb shaped" bruise on her throat. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness' testimony was not inherently incredible when it was corroborated by other evidence).[7] The trial court specifically found that the bruise depicted in Daley's photograph was "absolutely consistent with a thumb up by the neck and grabbing around the throat." "Photographs are 'an aid . . . in ascertaining the truth.'" *Bowman Apple Prods. Co., Inc. v. Commonwealth, State Water Control Bd.*, 50 Va. App. 383, 392 (2007) (quoting *Adams v. Ristine*, 138 Va. 273, 298 (1924)). We defer to the fact finder's interpretation of photographs. *See Donati v. Commonwealth*, 37 Va. App. 575, 581 (2002) (applying deferential standard of review to factual findings regarding recordings, sometimes referred to as a "silent witness"). An "appellate court does not 'retry the facts,'

---

[7] We note that corroboration is not necessary for a finding that a witness' testimony is credible. Domestic violence, like rape and other sexual offenses, often occurs outside the presence of witnesses "except the perpetrator and the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 89 (2005) (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)). As such, "a requirement of corroboration would result in most [domestic violence] offenses going unpunished." *Id.*

reweigh the evidence, or make its own determination of the 'credibility of the witnesses.'" *Yahner v. Fire-X Corp.*, 70 Va. App. 265, 273 (2019) (quoting *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019)). Not only could a rational fact finder conclude that the bruise on Pamela's neck was shaped like a thumb, it could also find that the location of the bruise and the small laceration on the right side of Pamela's throat were consistent with her testimony that appellant choked her with his right hand. Further, the damage to the door and the window blinds, as well as the bruises on Pamela's upper arm resulting from his "grabbing" her there, permitted the trial court to infer that appellant was enraged when he grabbed his wife by the throat and that he applied sufficient force to interfere with her breathing.

Contrary to appellant's assertion, Pamela testified that she sought medical treatment for neck pain and that she continued to experience that pain four days later. Appellant does not dispute that he assaulted his wife, and he admitted to the police that "things happened that shouldn't have." Further, while Pamela may or may not have recited the number of choking incidents to Daley, a rational fact finder could conclude that she initially attempted to minimize appellant's actions. Daley testified that, when he interviewed her, she was "crying and very emotional . . . like she didn't want to explain the situation in full." Viewed as a whole, the evidence supported a rational finding that, without Pamela's consent, appellant "impede[d] [her] blood circulation or respiration . . . by knowingly, intentionally, and unlawfully applying pressure to [her] neck . . . resulting in [her] . . . bodily injury." Code § 18.2-51.6. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of strangulation. The judgment of the trial court is affirmed.

*Affirmed.*