Present: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Russell, S.J.

TINA MARIE BRYANT

v. Record No. 170712

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
April 5, 2018

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal involves consideration of the elements of the crime of unlawfully discharging a firearm within an occupied building, made a Class 6 felony by Code § 18.2-279. Specifically, it presents the question whether the Commonwealth has the burden of proving that the firearm was not discharged accidentally or inadvertently.

FACTS AND PROCEEDINGS

Except for the issue of the defendant's intent when discharging the firearm, the essential facts are undisputed. Tina Marie Bryant (the defendant) was a resident of Calvert County, Maryland in August 2015. She had become so deeply depressed by the loss of her job and the recent sudden death of her mother that she resolved to end her life. On August 8, 2015, after taking a .45 caliber semi-automatic pistol and a clip of ammunition from the home of a friend, she drove to Harrisonburg, Virginia, intending to die by suicide there. As a witness in her own defense at trial, she testified that she loved the mountains and wanted to see them again on the last day of her life.

The office of the Sheriff of Calvert County was made aware of her departure, her expressed intentions and her possession of the firearm. By a process of "pinging" on her cellular telephone, the Maryland authorities were able to determine her approximate location, which proved to be in Rockingham County, Virginia. The Maryland authorities relayed this information to the office of the Sheriff of Rockingham County, requesting a "welfare check" on

the defendant and advising that she was "mentally unstable" and in possession of a firearm. Rockingham County Sheriff's deputies located the defendant's car parked outside the Country Inn and Suites, a hotel located in the City of Harrisonburg on the county line.

Inquiring at the front desk, the deputies ascertained that the defendant was registered in Room 104, on the ground floor. The deputies went to that room and knocked on the door. There was no response. At their request, the clerk called the room's telephone but there was no answer. The manager gave them a universal key to unlock the door, but it failed to function. The defendant, evidently hearing the activities outside the door, called out that they should not come in, that she had a gun and if they came in she would shoot herself. Her voice sounded "angry" and "upset."

One of the deputies initiated a conversation with her through the closed door in an effort to calm her. He told her that they wanted only "to see that she was okay so we could try to get her some help." She responded that she was disgusted with life and that she wanted the police to shoot her. As the conversation proceeded, she seemed to become more calm. During this time the hotel staff began evacuating other guests from the rooms adjacent and on the floor above. Other deputies were sent outside the building to observe the interior of the defendant's room through its exterior window.

Suddenly, the deputies heard a gunshot within the room. The senior deputy present called to her several times: "Are you okay?" After a 15-second silence, she responded: "I'm not hurt." The senior deputy asked her to go put the pistol on the bed and to go to the window and put her hands on the window to enable the deputies outside to be sure that she had put the weapon down. Upon receiving word by radio from the deputies outside that she had complied with that request, the deputies outside the door forced it open and entered the room. The

2

defendant was standing, her arms at her sides, her hands empty. The pistol was on the bed. A hole was visible in the carpet that covered the concrete floor. The fragmented spent round was recovered from the concrete near the hole. She had an injury to her hand that evidently resulted from holding the weapon too close to the slide when it came back after firing to eject the spent cartridge case and load the next round. She offered no resistance and was transported to a hospital.

In the Circuit Court of Rockingham County, the defendant was indicted for unlawfully discharging a firearm within an occupied building in violation of Code § 18.2-279. At a jury trial, the defendant testified that while the senior deputy was talking to her through the closed door, she had been holding the weapon to her head with her finger on the trigger. At some point, however, she made a split-second decision, motivated by her religious beliefs, to abandon her suicidal intent. She testified that the weapon discharged accidentally while she was trying to put it down. She adamantly denied any intent to fire it.

Without objection, the court gave the following instruction to the jury, which is adapted from 1 Virginia Model Jury Instructions-Criminal No. G18.100:

> The defendant is charged with the crime of discharging a firearm within an occupied building. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant discharged a firearm within a building occupied by one or more persons; and
>
> (2) That the firearm was discharged in such a manner as to endanger the life or lives of such person or persons.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty of unlawfully discharging a firearm, but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt either or both of the first two elements of the crime, then you shall find the defendant not guilty.

"It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Online Res. Corp. v. Lawlor*, 285 Va. 40, 60-61, 736 S.E.2d 886, 897 (2013); *Powell v. Warden of the Sussex I State Prison*, 272 Va. 217, 236, 634 S.E.2d 289, 298 (2006); *Spencer v. Commonwealth*, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990).

At trial, the defense raised only the issue of the defendant's intent when firing the shot. Consequently, no issue whether the evidence was sufficient to prove that the shot was fired in such a manner as to endanger others was submitted at trial. Therefore, no question related to the second element of the offense, as framed by this instruction, is before us in this appeal.

The defense offered the following instruction, which the Court refused:

> Where, as in the case at bar, the defense is that the discharge of the firearm was accidental, the defendant is not required to prove this fact, beyond a reasonable doubt or by a preponderance of the evidence, but the burden is upon the Commonwealth to prove beyond a reasonable doubt that said firearm discharge was not accidental; therefore, if after hearing all of the evidence, you have a reasonable doubt whether said firearm discharge was accidental or that it was intentional, then you shall find the defendant not guilty.

At the conclusion of trial, the jury returned a verdict finding the defendant guilty as charged. After hearing evidence in mitigation, the jury returned a verdict fixing her punishment at a fine of zero dollars, with no confinement.

The defendant appealed her conviction to the Court of Appeals, which granted the appeal. There, as here, she assigned two errors: (1) that the evidence was insufficient to support the conviction because of a lack of proof that she intentionally discharged the firearm, and (2) that the trial court erred in refusing to instruct the jury that the burden was on the Commonwealth to

4

prove, beyond a reasonable doubt, that her discharge of the firearm was not accidental. In a published opinion, the Court of Appeals affirmed the conviction. *Bryant v. Commonwealth*, 67 Va. App. 569, 798 S.E.2d 459 (2017). We awarded the defendant an appeal.

ANALYSIS

A single dispositive question is presented by both assignments of error: Does Code § 18.2-279 require, as an element of the crime of unlawful discharge of a firearm within an occupied building, proof that the firearm was discharged intentionally? Put another way, is proof of accidental or inadvertent discharge a defense? That is a pure question of statutory interpretation, subject to de novo review on appeal. *Washington v. Commonwealth*, 272 Va. 449, 455, 634 S.E.2d 310, 313-14 (2006). For the reasons that follow, we answer that question in the negative. Code § 18.2-279 provides:

> If any person maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, or maliciously shoots at, or maliciously throws any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony. In the event of the death of any person, resulting from such malicious shooting or throwing, the person so offending is guilty of murder in the second degree. However, if the homicide is willful, deliberate and premeditated, he is guilty of murder in the first degree.
>
> If any such act be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony; and, in the event of the death of any person resulting from such unlawful shooting or throwing, the person so offending is guilty of involuntary manslaughter. If any person willfully discharges a firearm within or shoots at any school building whether occupied or not, he is guilty of a Class 4 felony.

The language of Code § 18.2-279 is plain and unambiguous. Among other acts, it proscribes the act of discharging a firearm within an occupied building in such a manner as to endanger the life of a person therein. It distinguishes, however, between several levels of the

5

offense and subjects them to punishments that differ according to the mens rea of the offender and the resulting harm. Shooting in an occupied building in such a manner as to put such a person's life in peril, if done "maliciously," is punishable as a Class 4 felony. Doing so "unlawfully" is punishable as a Class 6 felony. If death of a person results from such a shooting done "maliciously," it is punishable as second-degree murder. If done willfully, deliberately and with premeditation, it is punishable as first-degree murder. If, however, such a shooting is done "unlawfully" and results in death of a person, it is punishable as involuntary manslaughter.

These distinctions demonstrate a clear legislative intent not only to proscribe the acts described in Code § 18.2-279 but also to punish them differently, taking into account the differing levels of culpability attending them. The legislative use of the terms "maliciously" and "unlawfully" in this section, in connection with the varying punishments provided, makes the distinctions clear. "Maliciously" describes a wrongful act done "willfully or purposefully." *Essex v. Commonwealth*, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984). "Unlawfully," however, describes conduct that merely demonstrates "criminal negligence." *Gooden v. Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984). "Criminal negligence" is judged under an objective standard and may be found to exist where the offender either knew or should have known the probable results of her acts. *Riley v. Commonwealth*, 277 Va. 467, 483-84, 675 S.E.2d 168, 177 (2009). In *Riley*, this Court defined criminal negligence in terms of gross negligence, stating:

> "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

*Id.* (citations omitted).

6

By including involuntary manslaughter in the offenses punished for acts done "unlawfully" under this statute, the General Assembly demonstrated its recognition that the irresponsibility of the proscribed conduct standing alone may be the mens rea underlying the offense. No specific intent need be shown. The common-law definition of involuntary manslaughter is "the accidental killing of a person, *contrary to the intention of the parties*, during the prosecution of an unlawful, but not felonious act, or during the improper performance of some lawful act." *Gooden*, 226 Va. at 570-71, 311 S.E.2d at 783-84 (emphasis added).

In *Ellis v. Commonwealth*, 281 Va. 499, 706 S.E.2d 849 (2011), a case involving unlawfully shooting at an occupied building in violation of Code § 18.2-279, we held that the statute did not require the Commonwealth to prove that the defendant had any specific intent, but merely general criminal intent. We said that the legislative purpose of the statute was "to prohibit unlawful conduct, whether malicious or merely criminally reckless, which has the potential to endanger the lives of persons inside the occupied buildings, without regard to the shooter's actual motive or intent. . . ." *Id.* at 506, 706 S.E.2d at 852. That purpose amounts to a legislative determination that handling an instrumentality as inherently dangerous as a loaded firearm in an occupied building, with one's finger on the trigger, is criminally negligent if discharge results in such a manner as to endanger others in the building. The General Assembly has made such conduct "unlawful" and punishable as a Class 6 felony even if done accidentally or unintentionally.

## CONCLUSION

We conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the conviction without any proof of the defendant's intent when discharging the firearm. The jury instruction given without objection in this case, adapted from

7

the model instruction, "accurately conveyed [the] applicable law without confusion to the jury" and "properly instructed the jury on the law and the facts of the case." *Muhammad v. Commonwealth*, 269 Va. 451, 485, 619 S.E.2d 16, 35 (2005). We presume that jurors follow the instructions they are given. *Prieto v. Warden*, 286 Va. 99, 107, 748 S.E.2d 94, 103 (2013). The defendant's proposed additional jury instruction placing the burden upon the Commonwealth to prove that the discharge of the firearm was not accidental was properly refused as an incorrect statement of the law. Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*