# COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

WON YUNG JUNG

v.      Record No. 0529-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
MARCH 21, 2023

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Ryan D. Ruzic, Public Defender, for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Won Yung Jung appeals his conviction for second-degree murder in violation of Code

§ 18.2-32. The appellant contends that the trial court abused its discretion by granting the

Commonwealth's motion *in limine* to exclude certain evidence during trial. He also argues that the

court erroneously allowed the Commonwealth to introduce hearsay evidence in its opening

statement. In addition, the appellant challenges the admission of six photographs depicting his

residence. Last, he argues that the court erred by instructing the jury that it could consider evidence

of his character in determining his guilt or innocence. For the following reasons, we affirm the

conviction.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND

I. The Offense and Investigation[1]

Du Chil Park operated a Buddhist temple from his residence in Fauquier County. On June 29, 2008, Fauquier County deputies went to the temple after receiving a report of a "suspicious death." They found Park's body in "severe stages of decomposition." Park had been last seen alive on June 20, 2008, and law enforcement later determined he had been killed on June 24, 2008. Park's autopsy revealed that his death was caused by at least six stab wounds in the neck.

Albert Stapf, a friend of Park's, identified the appellant to the police as a possible suspect in the murder. Stapf had visited Park three or four times a week at Park's residence where he sometimes encountered the appellant. The appellant was a "director of the temple" when Stapf first met him. However, at Park's request, Stapf replaced the appellant as a director in 2006. According to Stapf, at that time, Park's behavior changed. Stapf said that Park became "paranoid" and asked him to be at the temple any time the appellant was there. After a "very heated" argument between Park and the appellant in 2007, which Stapf overheard but did not understand because they were speaking Korean, Park ordered the appellant to leave the premises. Stapf never saw the appellant at the temple again.

Two F.B.I. agents assisted the Fauquier County Sheriff's Office in investigating Park's murder. After several attempts to contact the appellant, Special Agent Song spoke with him by telephone two months after the murder in August 2008. During the phone call, the appellant told Song that he wrote "a bad check" from his girlfriend's account for about $3,000 and used the money

---

[1] In accordance with familiar appellate principles, we review the facts in the light most favorable to the Commonwealth, as the prevailing party at trial and proponent of the jury instruction. *See Davison v. Commonwealth*, 69 Va. App. 321, 327 (2018) (jury instruction), *aff'd*, 298 Va. 177 (2019); *Lynch v. Commonwealth*, 46 Va. App. 342, 345 (2005) (admissibility of evidence).

"for gambling." The appellant said that he was in New York at the time of the phone call. They then agreed to meet in McLean, Virginia, but the appellant never went to the arranged meeting.

Almost two years later, in July 2010, Song and Special Agent Sohn met with the appellant in Las Vegas, Nevada, where he was in police custody on unrelated charges. During that meeting, the appellant stated that on the day Park died, he went to Park's house "in the noontime to drink with him." According to the appellant, the two drank beer and liquor that day and into the night. The appellant asked Park to accompany him to Atlanta, Georgia, "as a support" to convince the appellant's brother to lend him money to pay his gambling debts.[2] The appellant admitted that "he drinks a lot" of alcohol and, because of this excess, that "his friends refer to him as [C]oma." The appellant explained that he slept on the couch at the temple on the night of the murder. He recalled Park "putting a blanket over him." He told the F.B.I. agents that "when he awoke, he saw a dead body." He described his state upon waking as "dazed and confused." Although the appellant concluded that he "must have killed" Park, he could not remember doing so. When he discovered Park's body, the appellant decided to "run away" and immediately drove to New York.

The Sheriff's Office obtained an arrest warrant for the appellant in 2020.

II. Relevant Trial Proceedings

The Commonwealth filed a pretrial motion *in limine* to bar the defense from eliciting testimony about whether the prosecution had been "previously declined or refused." The Commonwealth asserted that "[s]uch testimony would be inappropriate, irrelevant and would serve only to confuse and distract the jury." The appellant argued he should be able to show that he was not "fleeing from prosecution because there hadn't been a prosecution that had been initiated." Following a hearing, the trial court granted the Commonwealth's motion, but allowed the appellant

---

[2] The appellant believed that Park's support would bolster his persuasiveness with his brother because in Korean culture, accompanying a Buddhist monk "brings a little bit of status, or it shows credibility."

- 3 -

to "show that there was no outstanding warrant" between 2008 and 2020. The court emphasized that the parties were not permitted to discuss "whether the Commonwealth had agreed to prosecute or not prosecute or how many Commonwealth's attorneys were involved."[3]

In its opening statement, the Commonwealth referred to expected testimony from Stapf that Park feared the appellant after Park removed him as a temple director. The appellant objected, arguing that the statement was inadmissible hearsay. The trial court overruled the objection. During Stapf's testimony, the appellant again objected based on hearsay, arguing that Stapf could not testify about anything Park said. The trial court sustained the objection. Stapf testified that Park was "paranoid" after the appellant was removed as a director and wanted Stapf to be present at the temple when the appellant was there. He did not repeat specific statements that Park made to him.

In the Commonwealth's case-in-chief, over the appellant's objection, the prosecutor introduced six photographs of the appellant's former residence. The photos were taken in July 2008 when the police searched the house. They showed that the house was vacant. The appellant argued that the photos were not relevant. The trial court admitted the photographs into evidence, stating that the jury could determine the weight to give them.

During the jury instruction phase, the Commonwealth offered an instruction that the jury could "consider the character of Won Yung Jung when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence." The appellant objected to the instruction. In granting the instruction, the trial court found there was "evidence concerning some checks and other things that c[a]me in that obviously would go to character."

---

[3] In closing argument, defense counsel told the jury that the appellant had not been evading arrest or prosecution "for the last ten years" and was not charged with Park's murder until November 2020.

The jury convicted the appellant of second-degree murder. He was sentenced to thirty years in prison, with ten years suspended.

ANALYSIS

I. Motion *in Limine*

The appellant argues that the trial court abused its discretion by preventing him "from introducing evidence that significant time had passed between the incident and the trial because previous Commonwealth's Attorneys had declined to prosecute the case." Acknowledging that the trial court permitted him "to comment on the timing of the [2020] warrant," he asserts that granting the motion *in limine* limited his ability to explore fully the lengthy delay between the killing and the prosecution.

At the outset, we address the Commonwealth's contention that the appellant failed to proffer the specific evidence he expected to present and therefore this Court cannot reach the merits of his claim. Absent a proper proffer of the expected evidence, the appellate court cannot determine its admissibility and "whether the exclusion of the evidence was prejudicial to the proffering party." *See Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020). The purpose of a proffer is "to allow the trial court a fair opportunity 'to resolve the issue at trial' and 'to provide a sufficient record for . . . review [on appeal].'" *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015) (alteration in original) (quoting *Albert v. Albert*, 38 Va. App. 284, 290 n.1 (2002)). Defense counsel explained at the hearing on the motion *in limine* that the delay in prosecuting the appellant was due to three prior Commonwealth's Attorneys declining to pursue the case. The court understood the basis of the appellant's argument and ruled that evidence about the decisions of prior prosecutors was improper and would not be admitted. Based on the record, the appellant made an adequate proffer to the trial court, and it is sufficient for this Court to rule on the merits of the claim.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "This bell-shaped curve of reasonability" guiding appellate review "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). A reviewing court can conclude that "an abuse of discretion has occurred" only when "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Generally, absent other constraints, evidence is admissible as long as it is relevant. Va. R. Evid. 2:402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad . . . ." *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016). In order to be admissible as relevant, evidence must "tend[ ] to prove a matter that is properly at issue in the case." *Id.* at 635 (alteration in original) (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003)).

Here, although the court did not permit the precise evidence the appellant proffered about previous Commonwealth's Attorneys not bringing charges against him, it allowed proper evidence that made the appellant's point. The court allowed into evidence the information that the Fauquier County Sheriff's Office did not obtain an arrest warrant until 2020, ten years after the appellant's statement to F.B.I. agents that he believed he had murdered Park, and twelve years after Park's murder. The court admitted this evidence as relevant to the length of time that passed before the state pursued charges against the appellant, so he could argue that he had not fled from prosecution.

In contrast, the court excluded evidence about the decisions made by prior prosecutors about the appellant's case. Those decisions, rooted in prosecutorial discretion, were not relevant to the jury's determination of guilt or innocence based on the evidence presented at trial in 2021. *See generally Lilly v. Commonwealth*, 50 Va. App. 173, 185-86 (2007) (holding that in the defendant's trial for driving as a habitual offender, information about the mandatory minimum sentence and the partial repeal of the habitual offender statute was not relevant to the factual issues before the jury).

In addition, informing the jury that prior Commonwealth's Attorneys had elected not to prosecute the case would have impermissibly colored the jury's interpretation of the evidence. *See United States v. Young*, 470 U.S. 1, 18-19 (1985) (holding that comments made by the prosecutor reflecting his or her opinion regarding the evidence at trial or the defendant's guilt were inappropriate because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"); *White v. State*, 258 A.3d 147, 159 (Del. 2021) (same); *State v. Stricklin*, 916 N.W.2d 413, 427 (Neb. 2018) (same); *see also Artis v. Commonwealth*, 213 Va. 220, 227 (1972) (holding that counsel's comment in closing argument was improper because "attorneys should assiduously refrain from injecting their own personal opinion of the evidence, or personal opinion as to the competency of witnesses and the weight to be accorded their testimony").

The trial court correctly excluded improper and confusing evidence. Instead, it permitted proper information for the jury to consider that supported the appellant's factual point that the lengthy delay was not due to him absconding. For these reasons, we hold that the trial court did not abuse its discretion in granting the motion *in limine*.

II. Hearsay Evidence in Opening Statement

The appellant argues that by allowing the prosecutor to say in the opening statement that Park feared the appellant after he was removed as a director of the temple, the trial court put "an incredibly damaging, and inadmissible, fact in the [j]ury's collective mind."

"A trial court has broad discretion in the supervision of opening statements and closing argument." *Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988)). "This Court will not reverse the [trial] court's ruling 'unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced.'" *Id.* (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 639 (1997)).

The appellant's argument relates to a specific comment by the prosecutor during opening statements.[4] "An opening statement is not evidence . . . ." *Arrington v. Commonwealth*, 10 Va. App. 446, 448 (1990). "[I]ts purpose is 'merely to inform the jury of what counsel expects the evidence to be so that they may better understand the evidence.'" *Id.* (quoting *Fields v. Commonwealth*, 2 Va. App. 300, 307 (1986)).

The challenged statement is that Park would call Stapf "to come when he feared that [the appellant] was coming over." During Stapf's testimony, he did not repeat what Park had told him, but instead he said that Park became "paranoid" after the appellant was removed as a director of the temple. Stapf also stated that Park asked him to be at the temple whenever the appellant was there. His testimony supported the prosecutor's opening remark in sum and substance that Park

---

[4] We assume without deciding that the appellant did not waive his challenge to the opening statement despite his failure to make a motion for a mistrial. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018). *See generally Tizon v. Commonwealth*, 60 Va. App. 1, 13 (2012) (holding that the defendant waived "any appellate challenge to the prosecutor's allegedly improper remark during opening statement" by not making a "timely motion for a mistrial").

feared the appellant, and it was relevant to explain the relationship between the two men. *See id.* ("A prosecutor should confine his or her opening statement to a description of evidence which will be offered and which he or she believes in good faith will be available and admissible.").

Additionally, the trial court specifically instructed the jury prior to opening statements that they are "what [the attorneys] expect the evidence to be" but are "not evidence and you must not consider [them] evidence." It is well settled that jurors are presumed to follow the instructions they are given. *Bryant v. Commonwealth*, 295 Va. 302, 311 (2018). Consequently, "no prejudice could have resulted." *Arrington*, 10 Va. App. at 449.

For these reasons, the court did not abuse its discretion by allowing the prosecutor to say in the opening statement that the victim feared the appellant.

### III. Admission of Photographs

The appellant challenges the admission of the Commonwealth's exhibits 92 through 97, the photographs of his former residence showing that the house was vacant in July 2008. He argues that these photos were irrelevant and therefore not admissible evidence.

The law regarding relevance is broad. Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401; *see Jones*, 71 Va. App. at 88-89.

The challenged photographs were relevant to the appellant's consciousness of guilt. Taken within weeks of the murder, they showed that the residence was empty. The appellant told investigators that when he discovered Park's body, he decided to "run away" and immediately drove to New York. The photos were relevant to support the Commonwealth's theory that the appellant did not intend to return after fleeing to New York. "[I]t is today universally conceded that the fact of an accused's flight . . . and related conduct[] are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Lambert v. Commonwealth*, 70 Va. App. 740,

760 (2019) (quoting *Leonard v. Commonwealth*, 39 Va. App. 134, 149 (2002)). Consequently, the trial court did not abuse its discretion by admitting the photos. *See Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (stating that absent an abuse of discretion, a trial court's evidentiary ruling will be upheld on appeal). Once the threshold for admissibility of the photos was met, it was up to the jury to determine what weight to give them. *See Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019).

IV. Jury Instruction

The appellant argues that the trial court erred by instructing the jury that it could consider his character "when proven by the evidence." He contends that the record did not support the instruction.

Whether to grant or deny a proposed instruction "generally rests 'in the sound discretion of the trial court.'" *Graves v. Commonwealth*, 65 Va. App. 702, 707 (2016) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)); *cf. Lindsey v. Commonwealth*, 293 Va. 1, 5 (2017) (noting that an appellate court reviews de novo whether a jury instruction accurately states the relevant law). In giving jury instructions, a trial court should "clearly state[]" the law and "cover all issues which the evidence fairly raises." *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). On appeal, this Court views the facts relating to this specific claim in the light most favorable to the proponent of the instruction, in this case the Commonwealth. *See Davison v. Commonwealth*, 69 Va. App. 321, 327 (2018), *aff'd*, 298 Va. 177 (2019). A proposed instruction must be supported by "more than a scintilla of evidence." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). This is a determination "resolved on a case-by-case basis." *Williams v. Commonwealth*, 64 Va. App. 240, 247 (2015) (quoting *Brandau v. Commonwealth*, 16 Va. App. 408, 412 (1993)).

The Commonwealth presented evidence that the appellant wrote a bad check, drank alcohol excessively, and gambled. The trial court considered that evidence to be character evidence. Accordingly, the court instructed the jury that it could consider evidence of the appellant's character, "whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence."

Although the instruction was based on Virginia Criminal Model Jury Instruction 2.200 and a correct statement of the law, the trial court abused its discretion in giving the instruction because it applies only when "the *defendant* has offered character evidence."[5] *See* Comment, Virginia Criminal Model Jury Instruction 2.200 (emphasis added). "The weight of authority is to the effect that character is not in issue unless put there by the defendant." *Robinson v. Commonwealth*, 118 Va. 785, 790 (1916); *see Zirkle v. Commonwealth*, 189 Va. 862, 871 (1949) (holding that the Commonwealth may not "introduce any testimony of the bad reputation of the accused until the accused has put the pertinent traits of his character in issue"); *Pughsley v. Commonwealth*, 33 Va. App. 640, 645-46 (2000) (stating that the Commonwealth can present evidence of a defendant's bad character only if the defendant put his character into issue by offering his own evidence of his good character); *see also* Va. R. Evid. 2:404(a)(1) (stating that "[e]vidence of a pertinent character trait of the accused offered by the accused, or by the prosecution to rebut the same" may be admissible). The appellant did not testify or offer evidence of his good character, and consequently the instruction did not apply.

While we hold that giving the instruction in this case was error, that conclusion does not end the inquiry. "Virginia law requires that in all criminal cases in which the appellate court finds that error occurred in the trial court, it must consider whether the error was harmless."

---

[5] Based on our resolution of this issue, we will assume without deciding the appellant properly raised the specific challenge in the trial court. *See Commonwealth v. White*, 293 Va. 411, 419 (2017).

*Castillo v. Commonwealth*, 70 Va. App. 394, 429 (2019) (quoting *Graves*, 65 Va. App. at 711); *see Commonwealth v. White*, 293 Va. 411, 420 (2017) (stating that it is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless" (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983))). "There are two distinct tests for determining harmless error. One applies when the claim involves constitutional error and the other when it involves non-constitutional error." *Castillo*, 70 Va. App. at 429-30 (quoting *Graves*, 65 Va. App. at 711). In this case, the non-constitutional standard applies because the assignment of error challenges "the propriety of the [character evidence] instruction." *See Graves*, 65 Va. App. at 711; *see also Velasquez v. Commonwealth*, 276 Va. 326, 331 n.5 (2008) (applying the test for non-constitutional harmless error in holding that the trial court's error in instructing the jury was harmless).

A non-constitutional error is harmless when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *Graves*, 65 Va. App. at 712 (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

An error does not substantially affect the verdict where the evidence of guilt is so overwhelming that it renders the error insignificant by comparison and thus could not have affected the verdict. *See Haas v. Commonwealth*, 299 Va. 465, 469 (2021). We conclude that here the error could not have substantially affected the verdict and was harmless.

Evidence of the appellant's bad check, alcohol use, and gambling was introduced at trial, and he did not object to its admission. That evidence was squarely before the jury for its

- 12 -

consideration whether or not the character evidence instruction was given. *Cf. Gravely v. Commonwealth*, 13 Va. App. 560, 564 (1992) (holding that the Commonwealth's improper cross-examination of the defendant's witnesses was not harmless error because the jury would not have heard the challenged evidence but for the cross-examination).

Additionally, the appellant told the F.B.I. agents several times that he must have killed Park because he was the only person in the locked house with Park on June 24, 2008, albeit he did not remember doing so.[6] He told them he was concerned that his children would know what he had done. The appellant also said he must have told other people that he killed Park and "would tell the truth" when he was in court, "that he killed [Park]." Further, the appellant fled when he awoke and found Park's dead body. After the F.B.I. agents contacted the appellant in New York in August 2008, he failed to attend a later meeting scheduled during the phone call. In fact, the agents did not locate him until 2010 after he was in custody on unrelated charges in another state.

We recognize that the appellant also told the agents he did not kill Park and that no forensic evidence linked him to the crime scene. Nonetheless, the record contains "overwhelming" evidence of guilt. *See Commonwealth v. Kilpatrick*, __ Va. __, __ (Aug. 4, 2022). Consequently, the jury instruction error is "insignificant by comparison" and could not have affected the verdict. *See id.*

In light of the entire record, instructing the jury on considering the appellant's character in determining his guilt or innocence was harmless.[7] *See Velasquez*, 276 Va. at 330-31 (finding that

---

[6] The appellant admitted to drinking alcohol heavily the day before and into the night with Park.

[7] The Commonwealth argues that the character evidence was admitted under Virginia Rule of Evidence 2:404(b) to show the appellant's motive in killing Park and also explained that he did not remember the killing because he had blacked out from excessive alcohol consumption. However, we resolve the issue on harmless error grounds, and therefore we do not address this argument. *See White*, 293 Va. at 419.

the error in instructing the jury was harmless because the result would have been the same if the instruction had been refused); *Conley*, 74 Va. App. at 684 (same); *Graves*, 65 Va. App. at 713 (same).

CONCLUSION

The trial court acted within its discretion in granting the Commonwealth's motion *in limine*, allowing the Commonwealth to mention hearsay in its opening statement, and admitting the photographs of the appellant's vacant residence. Further, any error in giving the character evidence jury instruction was harmless. Accordingly, we affirm the appellant's conviction for second-degree murder.

*Affirmed.*