COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia

**PUBLISHED**

TIMOTHY MILES, S/K/A
 TIMOTHY L. MILES

                                                             OPINION BY
v.        Record No. 0288-22-2              JUDGE JAMES W. HALEY, JR.
                                                             JULY 25, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Daniel R. Bouton, Judge Designate

Norman H. Lamson for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Timothy Miles of six counts of unlawfully discharging a firearm in an

occupied building, in violation of Code § 18.2-279.[1]  Miles contends that the trial court erred by

failing to instruct the jury that the term "unlawful" refers to criminal negligence.  He also asserts

that the trial court erred by sustaining his convictions because the apartment where he fired a gun

at a police officer was not "occupied" within the intendment of Code § 18.2-279 merely because

the officer was present.  Moreover, even assuming that the building was "occupied," Miles

maintains that the evidence proved only a single violation of Code § 18.2-279 because, although

he shot six times, he fired "aimlessly in quick succession."  For the following reasons, we affirm

the trial court's judgment.

---

[1] The jury acquitted Miles of attempted capital murder and use of a firearm in the
commission of a felony.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

The relevant facts, framing the issues raised, can be concisely stated. Following a report of shots fired at a Charlottesville apartment complex, Corporal Huber received information at the scene suggesting Miles was the shooter. When Huber confronted Miles in an apartment, Huber and Miles exchanged gunfire. Miles, who was armed with a semi-automatic handgun, fired six times, wounding Huber. Huber and Miles were the only individuals in the apartment when Miles opened fire. A second officer reached the apartment doorway as the gunfire erupted. The incident was recorded on the second officer's body worn camera.

At trial, Miles denied any recollection of shooting his gun, but he admitted that he knew Huber was in the apartment immediately before he exchanged gunfire with the officer and disregarded the officer's commands to raise his hands. He also admitted that he knew he could not lawfully possess a firearm because he was a convicted felon and that, before he fired at Huber, the officer told Miles he had outstanding warrants. A firearm expert testified that Miles's 9mm firearm was a semi-automatic pistol, "meaning that it only fire[d] when you pull the trigger."

After the evidence closed, the parties submitted jury instructions to the court. With respect to the discharge of a firearm offenses, the Commonwealth submitted only a malicious discharge instruction, but Miles offered an instruction that included unlawful discharge as a lesser-included offense. When the trial court offered to hear argument from the parties, Miles replied that the

Commonwealth had agreed to his instruction, which the Commonwealth confirmed. The trial court agreed to give the proffered instruction. Miles also agreed that the jury should be instructed regarding the circumstances under which "heat of passion excludes malice."

The jury convicted Miles of six counts of unlawful discharge of a firearm in an occupied building and recommended a sentence of twelve years' incarceration. Miles filed several post-verdict motions challenging his convictions. Miles argued that the evidence had failed to prove that the building was "occupied" when he fired his weapon because Huber was neither a resident nor a guest there. Further, Miles maintained that the evidence failed to prove six separate counts of unlawfully discharging a firearm because he fired all six bullets in rapid succession. Moreover, Miles asserted that the jury instructions failed to inform the jury that "unlawful" referred to criminal negligence, thereby allowing the jury to convict him of a "non-existent" offense, "heat of passion" discharge of a firearm in an occupied building. The trial court denied each of Miles's motions and entered a final sentencing order imposing the jury's verdict. Miles appeals.

ANALYSIS

I. Jury Instructions on Unlawful Discharge

We do not disturb a trial court's judgment denying a motion to set aside a jury verdict "unless it is plainly wrong or without evidence to support it." *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 548 (2019) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)). We review a trial court's refusal to set aside a verdict based on allegedly erroneous jury instructions for abuse of discretion. *Boyd v. Weisberg*, 75 Va. App. 725, 736-37 (2022). Nevertheless, "[i]nstructions given without objection become the law of the case and thereby bind the parties in the trial court and . . . on [appellate] review." *Id.* at 736-37 (second and third alterations in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 461 (2018)). "Even if a party makes a motion to set aside the verdict, 'this does not save him from his failure to object to the

instructions which submitted the issues . . . to the jury." *Id.* at 737 (alteration in original) (quoting *Smith*, 296 Va. at 462).

"As a general rule, the matter of granting and refusing jury instructions rests 'in the sound discretion of the trial court.'" *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (alteration in original) (quoting *Cooper*, 277 Va. at 381). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

Miles contends that the trial court erred by denying his post-verdict motion challenging his convictions because the court simultaneously instructed the jury that heat of passion excludes malice, while failing to instruct it that criminal negligence is the scienter requirement for "unlawfully" discharging a firearm. Miles maintains that, because the trial court did not inform the jury that "unlawful" refers to criminal negligence, he was convicted of a non-offense: "heat of passion" discharge of a firearm.

As he did below, Miles concedes that he agreed to the unlawful discharge instruction and "insisted on" the "heat of passion language"; however, to the extent that his post-verdict objection was untimely, he asks that we consider his argument under either the good cause or ends of justice exceptions in Rule 5A:18. Although Miles agreed to these instructions, he asserts that the "invited error" doctrine is inapplicable because a conviction for a "non-offense" is a "fundamental error that can be raised at any time." Specifically, Miles maintains that "a claim of conviction for a non-existent offense can be made at any time," just as subject matter jurisdiction or an indictment's

failure to charge an offense may be raised at any time.[2]  Moreover, he contends that a trial court

lacks subject matter jurisdiction to enter a conviction when a jury instruction misstates the elements

of the offense.  We disagree.

"A party may not approbate and reprobate by taking successive positions in the course of

litigation that are either inconsistent with each other or mutually contradictory."  *Cangiano v.*

*LSH Bldg. Co.*, 271 Va. 171, 181 (2006).  "The doctrine protects a basic tenet of fair play: No

one should be permitted, in the language of the vernacular, to talk through both sides of his

mouth."  *W. Refin. Yorktown, Inc. v. Cnty. of York*, 292 Va. 804, 826 (2016) (quoting *Wooten v.*

*Bank of Am., N.A.*, 290 Va. 306, 310 (2015)).  "The approbate-reprobate doctrine is broader and

more demanding than Rule 5A:18."[3]  *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010).

Thus, a defendant does not suffer a "grave injustice" when he concurs with or invites the trial

court's ruling.[4]  *Id.*  Because Miles requested the very instructions about which he now

---

[2] To the extent that Miles asserts that the failure to instruct the jury on the meaning of "unlawful" deprived him of due process, we decline to address that argument because his assignment of error does not allege a constitutional violation.  *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020) (stating that an appellate court "cannot 'consider issues . . . not encompassed by [the] assignment of error'" (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017))).

[3] Most recently, the Court noted that, "[b]ecause the purpose of the approbate/reprobate doctrine is to prevent a defendant from 'tak[ing] advantage of the situation created by his own wrong,' the ends of justice exception does not apply when a defendant 'invite[s] the error of which he complain[s].'"  *Holman v. Commonwealth*, 77 Va. App. 283, 301 (2023) (second, third, and fourth alterations in original) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502-03 (2009)).  While not the ratio decidendi of that decision, the quoted language is used with approval.  Thus, we recognized in *Holman* that the approbate/reprobate doctrine "bar[s] a defendant from offering specific jury instructions but then appealing the language of those instructions."  *Id.*

[4] Even if Miles had not requested the jury instructions, the good cause exception to Rule 5A:18 does not apply because the record demonstrates that Miles was afforded multiple opportunities to voice his objections and that he did so through extensive post-verdict motions and hearings.  "The Court may only invoke the 'good cause' exception where an appellant did

- 5 -

complains—and because Miles was responsible for the lack of instruction on "criminal negligence"—we will not consider his arguments under either exception to Rule 5A:18.[5]

## II. "Occupied" Building

Miles asserts that the evidence failed to prove that he fired his gun in an "occupied" building in violation of Code § 18.2-279 because the only individual in the apartment when he fired was a police officer, as opposed to a guest or a resident. He contends that Huber did not "occupy" the apartment because Huber neither lived nor slept there. Miles maintains that Code § 18.2-279 "is not

not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

[5] We also reject Miles's argument that the trial court committed a "fundamental error" by allegedly misstating the elements of the offense. "It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Bryant v. Commonwealth*, 295 Va. 302, 307 (2018) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 60-61 (2013)). Even when a trial court erroneously instructs the jury on the "essential elements of the offense," the error is harmless if the record clearly establishes the defendant's guilt. *Conley v. Commonwealth*, 74 Va. App. 658, 683-84 (2022). In *Conley,* the defendant did not lodge a timely objection to a sodomy instruction that misstated the elements of the offense. *Id.* at 683. On appeal, however, he asked this Court to consider his argument under the ends of justice exception in Rule 5A:18. *Id.* We held that the trial court erred, but the error was harmless because video evidence clearly established Conley's guilt. *Id.* at 684.

Here, the body worn camera footage, combined with Miles's testimony, proved that Miles was criminally negligent when he discharged his gun. *See Bryant*, 295 Va. at 311 ("[H]andling an instrumentality as inherently dangerous as a loaded firearm in an occupied building, with one's finger on the trigger, [constitutes] criminal[] negligen[ce] if discharge . . . endanger[s] others in the building."). The body worn camera footage established that Miles, who admittedly realized that Huber was a police officer, disregarded the officer's orders to submit and fired his gun repeatedly in Huber's direction, wounding the officer. Recorded images, such as photographs and video footage, "aid . . . in ascertaining the truth." *Bowman Apple Prods. Co., Inc. v. Commonwealth, State Water Control Bd.*, 50 Va. App. 383, 392 (2007) (alteration in original) (quoting *Adams v. Ristine*, 138 Va. 273, 298 (1924)); *see also Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) ("Videotapes, like photographs, when properly authenticated, may be admitted . . . as 'mute,' 'silent,' or 'dumb' independent photographic witnesses." (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746, *cert. denied*, 409 U.S. 861 (1972))). Viewed as a whole, the evidence clearly proved that Miles possessed the requisite criminal intent for unlawful discharge of a weapon in an occupied building; thus, any error committed by the trial court in defining the scienter requirement for the offense was harmless. *Bowman Apple Prods.*, 50 Va. App. at 392; *Brooks*, 15 Va. App. at 410; *Bryant*, 295 Va. at 311.

designed for the protection of police officers who enter dwellings for the purpose of investigating crimes."[6]

We apply a de novo standard of review to the trial court's interpretation of a statute. *Hall v. Commonwealth*, 296 Va. 577, 582 (2018). "[W]e owe no deference to the circuit court's interpretation of the statutory scheme." *Cannaday v. Commonwealth*, 75 Va. App. 707, 716 (2022) (alteration in original) (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022)). "In interpreting law our 'primary objective . . . is to ascertain and give effect to legislative intent.'" *Id.* (alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 236 (2013)). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Jones v. Commonwealth*, 68 Va. App. 304, 307 (2017) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

Code § 18.2-279 states in pertinent part:

> If any person maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, or maliciously shoots at, or maliciously throws any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony. . . .
>
> If any such act be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony . . . .

---

[6] In the event that we construe "occupied" to include "anybody physically on the premises at the time of the discharge," Miles contends that such a construction should be applied only prospectively because a reasonable person would not be on notice that the term "occupied" applies that broadly. In essence, he contends that the statute, as written, is so vague that it is unconstitutional. *See Johnson v. United States*, 576 U.S. 591, 595 (2015) (recognizing due process violation when the government deprives a person of "life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes"). As noted above, we decline to address arguments that are beyond the scope of the assignment of error, and nothing in Miles's assignment of error alleges that the statute is unconstitutionally vague. *See* Rule 5A:20(c)(1); *Riddick*, 72 Va. App. at 146. Therefore, he has waived his constitutional argument.

We have not previously addressed the meaning of the term "occupied" in Code § 18.2-279. We have held, however, that "the statute is meant to prohibit unlawful conduct, whether malicious or merely criminally reckless, which has the potential to endanger the lives of *persons inside occupied buildings*, without regard to the shooter's actual motive or intent in unlawfully discharging a firearm." *Meade v. Commonwealth*, 74 Va. App. 796, 811 (2022) (emphasis added and omitted) (quoting *Ellis v. Commonwealth*, 281 Va. 499, 506 (2011)). Our Supreme Court has construed "the language of the . . . statute as a legislative declaration that human lives may be endangered when a deadly weapon is maliciously discharged at or against a building *occupied by people*." *Dowdy v. Commonwealth*, 220 Va. 114, 117 (1979) (emphasis added). Thus, to prove a violation of the statute, the Commonwealth need not establish that "human life was, in fact, endangered." *Id.* Instead, the Commonwealth must establish only "that the discharge of the firearm may have put [the victim's] life in peril." *Kirby v. Commonwealth*, 264 Va. 440, 445 (2002).

"A statute 'should be read to give reasonable effect to the words used and to promote the ability of the enactment to remedy the mischief at which it is directed.'" *Armstead v. Commonwealth*, 55 Va. App. 354, 360 (2009) (quoting *Mayhew v. Commonwealth*, 20 Va. App. 484, 489 (1995)). "When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language." *Proctor v. Commonwealth*, 40 Va. App. 233, 247 (2003) (quoting *Shelor Motor Co. v. Miller*, 261 Va. 473, 479 (2001)). "[W]hen determining the boundaries of such a statute, '[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction[.]'" *Id.* (second alteration in original) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 839 (1992)). "We must determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result." *Id.*

Code § 18.2-279 prohibits shooting in an occupied building in a manner that may imperil "one or more persons." *Bryant v. Commonwealth*, 295 Va. 302, 309 (2018). The statute criminalizes conduct that "'endanger[s] the lives of *persons inside* occupied buildings'" without otherwise qualifying the status of the "persons." *Meade*, 74 Va. App. at 811 (emphasis added) (quoting *Ellis*, 281 Va. at 506). Moreover, the statute contemplates that "*any* building" can be "occupied," and does not limit its application to "dwelling house[s]" where individuals eat and sleep. Code § 18.2-279; *cf.* Code § 18.2-77 (limiting arson statute to a "dwelling house," or some "other house in which persons usually dwell or lodge"). Nothing in the statute suggests that the General Assembly was concerned with preserving the lives of *only* tenants, owners, or otherwise lawful occupants of an apartment building.

"Adhering closely to statutory texts, Virginia courts presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Cornell v. Benedict*, __ Va. __, __ (Oct. 13, 2022) (quoting *Tvardek v. Powhatan Village Homeowners Ass'n, Inc*., 291 Va. 269, 277 (2016)). "The act of choosing carefully some words necessarily implies others are omitted with equal care." *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 156 (2018) (quoting *In re: Brown*, 295 Va. 202, 223 (2018)). "Although we strictly construe penal statutes against the Commonwealth, . . . 'we will not apply "an unreasonably restrictive interpretation of the statute that would subvert the legislative intent expressed therein."'" *Giles v. Commonwealth*, 51 Va. App. 449, 453 (2008) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 581 (2002)), *aff'd*, 277 Va. 369 (2009).

"[T]he word 'occupying' 'denotes a physical presence in or on a place or object.'" *Newman v. Erie Ins. Exch.*, 256 Va. 501, 505 (1998) (quoting *Stern v. Cincinnati Ins. Co.*, 252 Va. 307, 311 (1996)). "Occupy" means "[t]o take up the extent, space, room or time of."

*Occupy*, *Black's Law Dictionary* (11th ed. 2019). An "occupant" is "one who occupies a particular place or premises." *Occupant*, *Webster's Third New International Dictionary* (2002).

Given the legislature's intent to protect all people inside any building against physical harm, we hold that the term "occupied" in Code § 18.2-279 refers to the physical presence of any individual in the building when a firearm is discharged. *Meade*, 74 Va. App. at 811 (quoting *Ellis*, 281 Va. at 506). Accordingly, as Huber was in the building when Miles discharged his weapon, the evidence was sufficient to prove beyond a reasonable doubt that Miles unlawfully discharged a firearm in an occupied building.

### III. Unit of Prosecution

Although the evidence is undisputed that Miles fired his gun six times, he contends that the evidence was insufficient to prove six violations of Code § 18.2-279 because the shots were not separated by a "lapse" of time and placed only a single individual (Huber) at risk. He stresses that the footage depicted "rapid fire shots [that] lasted but a few brief seconds at most, and then ceased entirely."

As discussed above, we apply a de novo standard of review to a trial court's interpretation of a statute, including the definition assigned to a particular word in a statute. *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021); *Jones*, 68 Va. App. at 307. We recently held that the term "discharge" in Code § 18.2-279 is "bullet-specific," meaning each shot fired from a gun constitutes a separate discharge; and, thus, a separate offense.[7] *Taylor v. Commonwealth*, 77 Va. App. 149, 161-64 (2023). We noted that "the essence, or gravamen, of an offense under Code § 18.2-279 is the risk of endangerment or death to another as a result of discharging a firearm"

---

[7] As we recognized in *Taylor*, our Supreme Court has reached a similar conclusion in interpreting a related statute, Code § 18.2-154, holding that each shot fired at an occupied vehicle is a separate offense. *Taylor v. Commonwealth*, 77 Va. App. 149, 163 (2023) (citing *Stephens v. Commonwealth*, 263 Va. 58, 61-63 (2002)).

- 10 -

and that "[t]he life of another is endangered with the discharge of each shot, even if multiple shots are discharged in rapid succession." *Id.* at 163-64. "Given the unique harm a firearm may pose, it is logical that the legislature would intend to more severely punish a person firing multiple shots in the same occupied location in quick succession than someone who fires a single shot." *Id.* at 164. To hold otherwise, we concluded, would eliminate the "punitive deterrent" associated with firing multiple bullets at once, "essentially a buy one, harm as much as you like discount." *Id.* (quoting *State v. Rasabout*, 356 P.3d 1258, 1264 (Utah 2015)).

As Miles concedes, *Taylor* is dispositive of his argument. Under *Taylor*, the undisputed evidence supports the jury's reasonable conclusion that Miles was guilty of six counts of unlawfully discharging a firearm in an occupied building because Miles fired six times.

CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*

Chaney, J., concurring in the judgment.

I concur with the majority's judgment affirming Miles's convictions. I write separately because I would hold—as the best and narrowest ground for resolving Miles's first assignment of error[8]—that each of Miles's convictions is *not* for a non-offense.[9] In convicting Miles of unlawfully discharging a firearm within an occupied building and acquitting him of maliciously doing so, the jury determined that Miles discharged the firearm without malice. Contrary to Miles's argument on appeal, the fact that the jury was instructed that heat of passion can negate malice did not convert his conviction into the "non-existent offense [of] 'heat of passion' discharge."[10] Op. Br. 18. Rather, the jury convicted Miles of the offense of non-malicious unlawful discharge of a firearm within an occupied building. *See* Code § 18.2-279. In reaching their verdict, the jury necessarily found—in accordance with their instructions—that (1) Miles discharged a firearm within a building occupied by one or more persons and (2) the firearm was discharged in such a manner as to endanger the life or lives of such person or persons. Our Supreme Court has recognized that conduct satisfying these two elements is criminally negligent. *See Bryant v. Commonwealth*, 295 Va. 302, 311 (2018) (holding that Code § 18.2-279 reflects "a

---

[8] "Virginia courts strive to decide cases on the best and narrowest grounds available." *Nottingham v. Commonwealth*, 77 Va. App. 60, 67 n.6 (2023) (internal quotation marks omitted) (quoting *Matzuk v. Price*, 70 Va. App. 474, 481 n.6 (2019)). Here, resolving Miles's first assignment of error on the merits is the best and narrowest ground for deciding this issue. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (finding that "[i]n this case, resolution of the merits constitutes the best and narrowest ground" for decision and declining to decide whether appellant's argument was waived under Rule 5A:18). *See also Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree. The 'narrowest' answer to a legal question is the one affecting the least number of cases.").

[9] I disagree with the majority's opinion that it would not be a grave injustice if Miles had been convicted and sentenced to serve 12 years in prison for a non-offense.

[10] Miles did not invite error in the trial court because the relevant requested jury instructions accurately state the applicable law.

legislative determination that handling an instrumentality as inherently dangerous as a loaded firearm in an occupied building, with one's finger on the trigger, is criminally negligent if discharge results in such a manner as to endanger others in the building").  Therefore, contrary to Miles's contention on appeal, it was unnecessary to additionally instruct the jury that "unlawfully" means "with criminal negligence."  Since the jury received complete instructions on the elements of unlawfully discharging a firearm within an occupied building, the jury did not convict Miles of a non-offense.